UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER FLANAGAN,<br><br>Defendant | Criminal No. **25-cr-10131-DJC**<br><br>Violations:<br><br>Counts One -Eight: Wire Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1343 and 2)<br><br>Count Nine: Money Laundering<br>(18 U.S.C. § 1956(a)(1)(B)(i))<br><br>Count Ten: Falsification of Records; Aiding and Abetting<br>(18 U.S.C. §§ 1519 and 2)<br><br>Counts Eleven - Thirteen: Filing False Tax Returns<br>(26 U.S.C. § 7206)<br><br>Wire Fraud Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

SUPERSEDING INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.      CHRISTOPHER FLANAGAN ("FLANAGAN") was a resident of Dennis, Massachusetts.  FLANAGAN is currently the Massachusetts State Representative for the First Barnstable District, which includes the towns of Dennis, Yarmouth, and Brewster on Cape Cod. Prior to being elected to his first two-year term to the Massachusetts House of Representatives in 2022, FLANAGAN served two consecutive three-year terms as a member of the Town of Dennis

1

Select Board.  FLANAGAN received an annual compensation of approximately $97,546 and $100,945 in 2023 and 2024, respectively, from the Commonwealth of Massachusetts.

2.      From approximately early 2019 to mid-2024, FLANAGAN also served as the Executive Officer of a Home Builders Association in Cape Cod ("HBA"), which was a professional trade association that represented the Cape Cod building industry and had over 300 dues-paying company members.  As the HBA Executive Officer, FLANAGAN reported to a board of directors (the "HBA Board") and owed a fiduciary duty to the HBA and its members to, among other things, safeguard HBA funds and ensure that HBA monies were disbursed only for legitimate HBA business purposes.  FLANAGAN had signatory authority over HBA bank accounts at First Citizens' Federal Credit Union ("FCU") and Cape Cod Cooperative Bank (the "COOP"), which each had headquarters in Massachusetts.  FLANAGAN received annual salary and benefits ranging approximately from $65,800 to $81,600 from 2019 to 2024 from the HBA.

3.      Massachusetts state law required political committees and candidates for State Representative and elected State Representatives to file campaign finance reports with the Office of Campaign and Political Finance ("OCPF").  Massachusetts state law required filers to truthfully and accurately disclose, among other things, the sources and amounts of political contributions and political expenditures, and the identity of sub-vendors of any entity that received a yearly aggregate of $5,000 or more from the filer's campaign committee.  FLANAGAN was subject to these laws.

4.      OCPF is an independent state agency that administers Massachusetts campaign finance law, Massachusetts General Law, Chapter 55.  OCPF (i) serves as the depository for candidate and political committee reports of contributions and expenditures, (ii) reviews such reports, and (iii) is charged with ensuring compliance with state campaign finance law.

5.      On or about May 12, 2016, FLANAGAN formed FPMMA, LLC with the Massachusetts Secretary of State, with the purpose of rendering "real estate rentals for purchase." On or about June 10, 2016, FLANAGAN purchased a property in Dennis Port, MA (the "Dennis Port Property").

6.      The Internal Revenue Service ("IRS") is an agency of the Department of the Treasury responsible for enforcing and administering the tax laws of the United States.  The IRS operates an IRS Service Center in Andover, Massachusetts.

Scheme to Defraud

7.      FLANAGAN defrauded the HBA by (a) using his signatory authority as HBA Executive Officer to secretly withdraw tens of thousands of dollars from HBA's bank accounts; (b) entering false information in HBA's financial bookkeeping records; (c) providing materially false and misleading HBA financial information to the HBA Board during board meetings; and (d) creating and submitting false expense reports to the HBA Board to further conceal his fraud.

8.      Beginning in at least as early as October 2021, FLANAGAN was facing personal financial difficulty, which included (i) owing thousands of dollars in outstanding credit card debt, (ii) missing mortgage payments, and (iii) incurring hundreds of dollars in bank overdraft fees, which resulted from FLANAGAN maintaining low, and at times negative, daily bank balances in his Bank of America account ("BOA Account").

9.      From in or about February 2021 to in or about January 2023, FLANAGAN stole the following HBA funds from HBA's FCU account via the below interstate wire transactions:

| Appx. Date | Amount | Transaction |
| --- | --- | --- |
| Feb. 23, 2021 | $1,297.50 | Check deposit to FLANAGAN BOA Acct. |
| Nov. 18, 2021 | $8,000 | Transfer via PayPal to FLANAGAN BOA Acct. |
| Nov. 22, 2021 | $8,000 | Official Check deposit to FLANAGAN BOA Acct. |
| Nov. 3, 2022 | $1,500 | Transfer via PayPal to FLANAGAN PayPal Acct. |

3

| Dec. 19, 2022 | $8,500 | Official Check deposit to FLANAGAN BOA Acct. |
|---|---|---|
| Jan. 28, 2023 | $10,000 | Official Check deposit to FLANAGAN BOA Acct. |
| **Total** | **$37,297.50** | |

10.     In addition to stealing HBA funds via checks and PayPal transfers, FLANAGAN also stole hundreds of dollars in HBA funds to pay for personal psychic services in July 2022, which FLANAGAN conducted via direct debit transactions from the HBA FCU account.

11.     From in or about February 2021 to in or about December 2023, FLANAGAN also stole the following HBA funds from HBA's COOP account via the below interstate wire transactions:

| Appx. Date | Amount | Transaction |
|---|---|---|
| Feb. 12, 2021 | $2,745 | Check deposit to FLANAGAN BOA Acct. |
| May 23, 2022 | $1,926 | Check deposit to FLANAGAN BOA Acct. |
| Feb. 22, 2023 | $1,016 | Check deposit to FLANAGAN BOA Acct. |
| Dec. 15, 2023 | $1,600 | Check deposit to FLANAGAN BOA Acct. |
| **Total** | **$7,287** | |

12.     FLANAGAN used the majority of the stolen HBA funds to pay personal mortgage bills, to pay down thousands of dollars in credit card debt, and to make other personal expenditures, including thousands of dollars to Jackpocket (a mobile application that allows users to purchase lottery tickets using their phone) and for personal psychic services.  In one instance, FLANAGAN stole $10,000 from HBA in order to fund his campaign account (the "FLANAGAN Committee Account") at Cape Cod Five Cents Savings Bank.

13.     Because Massachusetts campaign finance law prohibits corporations and other corporate entities from making contributions to a political candidate, FLANAGAN masked the true source of his campaign funds through the following transactions:

| Appx. Date | Transaction |
|---|---|
| Jan. 28, 2023 | FLANAGAN deposits $10,000 HBA Official Check to FLANAGAN BOA Acct. |

| Feb. 2, 2023 | FLANAGAN issues $10,000 Cashier's Check from FLANAGAN BOA Acct. payable to "CTE Chris Flanagan" |
|---|---|
| Feb. 2, 2023 | FLANAGAN deposits $10,000 Cashier's Check to FLANAGAN Committee Account |
| Feb. 14, 2023 | FLANAGAN issues two $5,000 checks payable to a political campaign consultant from FLANAGAN Committee Account. |

*Additional Examples of FLANAGAN's Concealment*

14.     On or about May 5, 2024, FLANAGAN hid from the HBA Board the fact that he had been stealing from HBA by: (i) logging onto HBA's accounting/bookkeeping software using another HBA employee's account; (ii) entering backdated transactions to account for the $36,000 in funds he stole from HBA; and (iii) entering false transaction codes (e.g., "office supplies," "travel," and "bank charges") to mask the true reason for the withdrawals, which were, in reality, to pay FLANAGAN's outstanding personal and campaign debts.

15.     In or about May 2024, as part of FLANAGAN's concealment, FLANAGAN falsely claimed to the HBA Board that FLANAGAN withdrew HBA funds to reimburse himself for HBA-related expenses that he had paid for out-of-pocket with his personal funds.  When the HBA Board asked FLANAGAN to provide substantiation that FLANAGAN had used his personal funds to pay for HBA expenses, FLANAGAN provided two phony expense reports, each with itemized attachments:

    a.    "Expense Report 1," submitted to justify FLANAGAN's $8,500 withdrawal of HBA funds on December 19, 2022, including attachments which purported to list $8,500 in reimbursable expenses that FLANAGAN claimed he had spent on HBA-related expenditures from January 1 to May 31, 2022; and

    b.    "Expense Report 2," submitted to justify FLANAGAN's $10,000 withdrawal of HBA funds on January 28, 2023, including attachments

which purported to list $10,000 in reimbursable expenses that FLANAGAN

claimed he had spent on HBA-related expenditures from June 1, 2022 to

January 27, 2023:



(Expense Report 1)



(Expense Report 2)

16.     In attachments to Expense Report 1, FLANAGAN claimed that he had spent $159.36 on "Technology Expenses" at Best Buy on March 4, 2022 and $537.26 on "Office Supplies" at 4Imprint on April 18, 2022.  Records of the actual purchases, however, showed that the $159.36 Best Buy purchase was for a portable Bluetooth speaker and that the $537.26 purchase was to pay for t-shirts supporting FLANAGAN's State Representative campaign (below):[1]

---

[1] Massachusetts campaign finance laws required FLANAGAN to report this campaign expenditure to OCPF.  FLANAGAN did not report this campaign expenditure to OCPF.



17.    Further, in attachments to Expense Report 1 (covering purported HBA expenses incurred from January 1, 2022 to May 31, 2022), FLANAGAN included two charges from Hootsuite (a social media marketing and management platform), $624.74 on April 12, 2022 and $1,262.25 on May 12, 2022, claiming that he had incurred these "Technology Expenses" on behalf of HBA on those dates (on following page):

8

> **Technology Expenses:**
>
> 03/04/22 – Best Buy - $159.36
>
> 04/12/22 – Hootsuite - $624.75
>
> 05/12/22 – Hootsuite - $1,262.25
>
> Total: $2,046.36

18.     Attachments to Expense Report 1 that FLANAGAN submitted to the HBA Board, however, revealed that FLANAGAN had actually incurred the $1,262.25 Hootsuite expense on May 12, 2023, not 2022, but FLANAGAN had inserted single pages of his 2023 credit card statement among his 2022 credit card statements to conceal the discrepancy.

19.     In attachments to Expense Report 2, FLANAGAN claimed that he had spent $613.70 and $361.24 on "Office Supplies" at Best Buy on or about June 8, 2022 and on or about August 9, 2022, respectively; $1,050.30 on "Office Supplies" at Macy's on September 25, 2022; and $92.86 on "Office Supplies" at Target on September 25, 2022.    Records of the actual purchases, however, showed that the $613.70 and $361.24 Best Buy purchases were for an electric dryer and an air conditioner, both delivered to FLANAGAN's home; the $1,050.30 Macy's purchase was for men's ties, dress shirts, slacks, and sports coats; and the $92.86 purchase at Target was to pay for children's clothes and toys.

### Falsification of Documents

20.     In or about December 2022, OCPF opened an investigation regarding a campaign mailer that was distributed during FLANAGAN's 2022 campaign for State Representative (the "Mailer").    The Mailer had purportedly been distributed by a group called "Conservatives for Dennis":



21.     In its investigation, OCPF sought to determine: (i) the identity of the person or organization responsible for the Mailer; (ii) the vendors hired to create and distribute the Mailer; and (iii) the funding source, or person responsible for paying for the Mailer.

22.     In response, FLANAGAN obstructed the OCPF investigation by, among other things, (i) attributing the source of the Mailer to a false persona, "Jeanne Louise," whom FLANAGAN created to foster the appearance that an independent conservative group had endorsed FLANAGAN's candidacy for State Representative; (ii) lying to OCPF counsel, asserting that FLANAGAN had met a Jeanne Louise, whom FLANAGAN claimed offered to assist with FLANAGAN's campaign; and (iii) creating and sending phony emails to OCPF purporting to be on behalf of vendors responsible for creating and distributing the Mailer.

23.     In or about October 2023, after FLANAGAN, through counsel, admitted to OCPF that Jeanne Louise was fake and that FLANAGAN was the source of the Mailer, OCPF expanded its investigation into FLANAGAN's campaign finance activity, specifically, the $10,000 BOA

cashier's check that FLANAGAN had deposited into the FLANAGAN Committee Account on February 2, 2023 (the "$10,000 Campaign Check") (highlighted in yellow, above).

24.    In or about October 2023, OCPF requested that FLANAGAN produce evidence that the $10,000 Campaign Check had indeed come from FLANAGAN's personal funds.

25.    Around the time that FLANAGAN stole the $10,000 from HBA's FCU account via the $10,000 HBA Official Check (dated January 27, 2023), FLANAGAN's BOA Account had a monthly beginning bank balance of approximately $42.28 on January 20, 2023.  Because FLANAGAN's BOA bank records would have betrayed the fact that FLANAGAN could not have issued the $10,000 Campaign Check without his theft of HBA money, FLANAGAN created and submitted false documents to OCPF.

26.    On or about October 31, 2023, FLANAGAN caused the submission of false expense reports to OCPF in the form of Expense Report 1 and Expense Report 2 (the "Expense Reports")[2] (see above) as part of FLANAGAN's efforts to deceive OCPF into believing: (i) that the $10,000 HBA Official Check (dated January 27, 2023) that was deposited into FLANAGAN's BOA Account constituted legitimate HBA-reimbursed expenses; (ii) that HBA had a practice of allowing FLANAGAN to withdraw large sums of money from HBA for the purpose of expense reimbursement; and (iii) that the $10,000 Campaign Check was a legitimate donation of FLANAGAN's own personal funds.

---

[2] The Expense Reports that FLANAGAN submitted to OCPF and the HBA were virtually identical with one exception.  Expense Reports submitted to OCPF included hotel receipts and invoices for purported business travel on behalf of HBA.  Expense Reports that FLANAGAN submitted to the HBA did not include any hotel receipts or invoices.

<u>False and Fraudulent Tax Returns</u>

27.     For the tax years 2021 through 2023, FLANAGAN filed tax returns that failed to include all of his income, thus fraudulently lowering FLANAGAN's tax liability.

28.     IRS Form 1040 is used by taxpayers to file an annual income tax return.  On the Form 1040, taxpayers can choose a filing status including "Single," "Married filing jointly," and "Married filing separately," among others.

29.     Schedule C is the form attached to a Form 1040 used to report income or loss from a business you operate as a sole proprietor.

30.     For calendar years 2021, 2022, and 2023, FLANAGAN filed a Form 1040 with the filing status "Married Filing Separately."  For each tax return, FLANAGAN electronically transmitted the returns to the IRS.

*The Dennis Port Property*

31.     In 2023, FLANAGAN rented out the Dennis Port Property using a third-party vacation rental company (the "Rental Company").  The Rental Company paid FLANAGAN the rental income owed to him after taking out its fees via direct deposit.

32.     In 2023, FLANAGAN also rented out the Dennis Port Property to an individual. The individual paid FLANAGAN via Zelle.

33.     In 2024, FLANAGAN filed a Form 1040 United States Individual Income Tax Return for tax year 2023 (the "2023 Tax Return").  FLANAGAN did not report all of the income that he earned from the Dennis Port Property on the 2023 Tax Return.

       a.  On the 2023 Tax Return, FLANAGAN reported $15,000 in gross rental income.  FLANAGAN's bank records show that he actually earned gross

rental income of approximately $31,262.17. Therefore, FLANAGAN underreported rental income by approximately $15,738.31.

b.  On the 2023 Tax Return, FLANAGAN also reported approximately $144,120 in expenses related to the Dennis Port Property, including $35,600 in "Legal and Professional Services," and $25,000 for "Transportation."

c.  FLANAGAN's financial records do not reflect that he made $35,600 in payments for legal or professional services related to the Dennis Port Property in 2023. Additionally, FLANAGAN's financial records do not reflect that he spent $25,000 in transportation expenses related to the Dennis Port Property, which is located less than 4 miles from his personal residence.

*Unreported Embezzled Funds*

34.  The IRS requires that all income be reported on tax returns, even if the income is not legally earned.

35.  FLANAGAN's 2021, 2022, and 2023 Tax Returns were also materially false and fraudulent in that FLANAGAN did not report as income any of the funds that he embezzled from HBA, including the wire transfers from the FCU account and the unauthorized checks from the COOP and FCU accounts.

36.  In 2022, FLANAGAN filed a Form 1040 United States Individual Income Tax Return for tax year 2021 (the "2021 Tax Return"). On his 2021 Tax Return, FLANAGAN failed to report the $20,267.50 in funds he embezzled from HBA.

37.  In 2023, FLANAGAN filed a Form 1040 United States Individual Income Tax Return for tax year 2022 (the "2022 Tax Return"). On his 2022 Tax Return, FLANAGAN failed

to report the $11,311 in embezzled funds from HBA, or the $285 of HBA funds he used to pay for personal psychic services.

38.    On his 2023 Tax Return, FLANAGAN failed to report the $13,039.13 in embezzled funds from HBA.

COUNTS ONE - EIGHT
Wire Fraud; Aiding and Abetting
(18 U.S.C. §§ 1343 and 2)

The Grand Jury charges:

39.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-26 of this Indictment.

40.    From at least as early as November 2021 to in or around January 2023, in the District of Massachusetts, and elsewhere, the defendant,

CHRISTOPHER FLANAGAN,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud the HBA, as set forth below:

| Count | Appx. Date | Description |
|---|---|---|
| 1 | Nov. 18, 2021 | $8,000 Transfer via PayPal to FLANAGAN BOA Account |
| 2 | Nov. 22, 2021 | $8,000 Official Check Deposit to FLANAGAN BOA Account |
| 3 | May 23, 2022 | $1,926 Check Deposit to FLANAGAN BOA Account |
| 4 | Nov. 3, 2022 | $1,500 Transfer via PayPal to FLANAGAN PayPal Account |
| 5 | Dec. 19, 2022 | $8,500 Official Check Deposit to FLANAGAN BOA Account |
| 6 | Jan. 28, 2023 | $10,000 Official Check Deposit to FLANAGAN BOA Account |
| 7 | Feb. 22, 2023 | $1,016 Check Deposit to FLANAGAN BOA Account |
| 8 | Dec. 15, 2023 | $1,600 Check Deposit to FLANAGAN BOA Account |

All in violation of Title 18, United States Code, Sections 1343 and 2.

15

COUNT NINE
Money Laundering
(18 U.S.C. § 1956(a)(1)(B)(i))

The Grand Jury further charges:

41.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-26 of this Indictment.

42.    On or about February 2, 2023, in the District of Massachusetts and elsewhere, the defendant,

CHRISTOPHER FLANAGAN,

did conduct and attempt to conduct a financial transaction, to wit, purchasing a cashier's check drawn on his personal bank account with Bank of America payable to the Committee to Elect Chris Flanagan, and depositing that check into the Committee to Elect Chris Flanagan's bank account with Cape Cod 5 Cents Saving Bank, knowing that the property involved in such transaction represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, charged in Count 6 of this Indictment, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT TEN
### Falsification of Records; Aiding and Abetting
(18 U.S.C. §§ 1519 and 2)

The Grand Jury further charges:

43.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-26 of this Indictment.

44.    In or around October 2023, in the District of Massachusetts, and elsewhere, the defendant,

CHRISTOPHER FLANAGAN,

did knowingly conceal, cover up, falsify, and make a false entry in any record and document with the intent to impede, obstruct, and influence the investigation of any matter within the jurisdiction of any department and agency of the United States, to wit, the United States Postal Inspection Service, and in relation to and contemplation of any such matter:

| Count | Appx. Date | Description |
|---|---|---|
| 10 | Oct. 31, 2023 | Creation and Submission of Expense Report 1 and Expense Report 2 to OCPF |

All in violation of Title 18, United States Code, Sections 1519 and 2.

17

## COUNTS ELEVEN - THIRTEEN
Filing a False Tax Return
(26 U.S.C. § 7206(1))

The Grand Jury further charges:

45.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-38 of this Indictment.

46.     On or about dates set forth below, in the District of Massachusetts, the defendant,

### CHRISTOPHER FLANAGAN,

did willfully make and subscribe a U.S. Individual return, for the calendar years set forth below, each of which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Director, Internal Revenue Service, and each of which the defendant did not believe to be true and correct as to every material matter in that each return understated the defendant's total income, as a result of which each return understated the amount of taxes due and owing for that year.

| Count | Calendar Year | Approximate Filing Date |
|-------|---------------|-------------------------|
| 11 | 2021 | January 23, 2022 |
| 12 | 2022 | April 2, 2023 |
| 13 | 2023 | April 15, 2024 |

All in violation of Title 26, United States Code, Section 7206(1).

18

## WIRE FRAUD FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

47.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One to Eight, the defendant,

CHRISTOPHER FLANAGAN

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

48.     If any of the property described in Paragraph 47, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 47 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

19

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

49.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1956, set forth in Count Nine, the defendant,

### CHRISTOPHER FLANAGAN

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

50.     If any of the property described in Paragraph 49, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 49 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

LAUREN MAYNARD
DUSTIN CHAO
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: May 7, 2026
Returned into the District Court by the Grand Jurors and filed.

/s/ Noreen A. Russo

DEPUTY CLERK
                         at 4:40 PM

21