UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 25-cr-10131-DJC |
| | ) | |
| CHRISTOPHER FLANAGAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER

CASPER, C. J.                                                          June 8, 2026

I.    Introduction

Defendant Christopher Flanagan ("Flanagan") has moved to dismiss Count Ten of the Superseding Indictment against him, which charges him with falsification of records in violation of 18 U.S.C. §§ 1519 and 2, pursuant to Fed. R. Crim. P. 12(b). D. 52; see D. 62. For the reasons stated below, the Court DENIES the motion, D. 52.

II.    Standard of Review

A criminal defendant "enjoy[s] the right . . . to be informed of the nature and cause of the accusation" against him, U.S. Const. amend. VI, commonly through the "indictment of a Grand Jury," id. amend. V. An indictment must set out "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment need not say much to satisfy these requirements—it need only outline 'the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense.'" United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018) (quoting United States v. Guerrier, 669 F.3d 1, 3 (1st Cir. 2011)). A defendant may

1

move to dismiss an indictment before trial for alleged defects, including failure to state an offense, Fed. R. Crim. P. 12(b)(3)(B)(v).

"Ordinarily, with respect to such a motion, 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" United States v. Brissette, 919 F.3d 670, 675-76 (1st Cir. 2019) (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)).  Thus, a defendant challenging the sufficiency of an indictment bears a heavy burden, as a "federal court's power to dismiss an indictment is reserved for 'extremely limited circumstances.'" United States v. Cooper, No. 21-cr-10184-NMG, 2022 WL 4630230, at *1 (D. Mass. Sept. 30, 2022) (quoting Whitehouse v. U.S. Dist. Ct., 53 F.3d 1349, 1360 (1st Cir. 1995)). It follows from these principles that a motion to dismiss an indictment is limited to attacking the indictment's "facial validity" and not "the government's substantive case." United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015).  To survive a motion to dismiss, "the government need not put forth specific evidence," id., as "[w]hether the evidence [is] sufficient to back up [an indictment's] assertions [is] a matter for trial," United States v. Vega-Martínez, 949 F.3d 43, 49 (1st Cir. 2020). Rather, "[i]t is typically sufficient that an Indictment articulate the offense in the words of the statute itself as long as those words set forth all the elements of the offense without any uncertainty or ambiguity." United States v. Sidoo, 468 F. Supp. 3d 428, 436 (D. Mass. 2020) (citing United States v. Brown, 295 F.3d 152, 154 (1st Cir. 2002)).

## III.    Allegations Against Flanagan

In Count Ten of the Superseding Indictment, the government charged Flanagan with creating and submitting false records with the intent to impede the investigation of a matter within the jurisdiction of the United States and aiding and abetting same.  D. 62 ¶¶ 43-44.  As alleged, between approximately early 2019 to mid-2024, Flanagan served as the Executive Officer of a

Home Builders Association in Cape Code ("HBA").  Id. ¶ 2.  Additionally, in 2022, Flanagan was elected to his first two-year term as a Massachusetts State Representative.  Id. ¶ 1.  In or about February 2021 to in or about January 2023, Flanagan allegedly stole approximately $37,297.50 from HBA's account with First Citizens' Federal Credit Union ("FCU account") via interstate wire transactions.  Id. ¶ 9.  Flanagan also stole hundreds of dollars in HBA funds via direct debit transactions from the HBA FCU account.  Id. ¶ 10.  Additionally, in or about February 2021 to in or about December 2023, Flanagan stole approximately $7,287 from HBA's Cape Cod Cooperative Bank ("COOP") account via interstate wire transactions.  Id. ¶ 11.  Most of the stolen funds were used to pay personal expenses, such as mortgage payments, credit card debt, and other personal expenditures.  Id. ¶ 12.  In one instance, in or about January 2023, Flanagan stole $10,000 from HBA's FCU account to fund his state representative campaign account at Cape Cod Five Cents Savings Bank (the "Campaign Account").  Id.  To hide the source of the campaign funds, Flanagan first moved the money from the HBA FCU account via cashier's check, deposited that cashier's check into his personal Bank of America account, and in February 2023, withdrew $10,000 from his personal Bank of America account via cashier's check, and deposited that check into his Campaign Account.  Id. ¶ 13.

In or around December 2022, the Massachusetts Office of Campaign and Political Finance ("OCPF"), an independent state agency that administers Massachusetts's campaign finance law, opened an investigation regarding a mailer that was distributed during Flanagan's 2022 campaign for state representative.  Id. ¶ 20; see id. ¶ 4.  In its investigation, OCPF sought to determine:  "(i) the identity of the person or organization responsible for the Mailer; (ii) the vendors hired to create and distribute the Mailer; and (iii) the funding source, or person responsible for paying for the Mailer."  Id. ¶ 21.  In response, Flanagan initially attributed the funding source to a fake persona,

asserted that he had met said fake persona whom he claimed offered to assist with his campaign and created and sent "phony emails to OCPF purporting to be on behalf of vendors responsible for creating and distributing the Mailer." Id. ¶ 22. Later, in or around October 2023, Flanagan admitted to OCPF that he had falsely attributed the source of the mailer to a fake persona and that he instead was the source. Id. ¶ 23. OCPF subsequently expanded its investigation into Flanagan's campaign finance activity, specifically the $10,000 Bank of America cashier's check that Flanagan had deposited into his Campaign Account in February 2023. Id.

As a part of this investigation, in or about October 2023, OCPF requested that Flanagan produce evidence that the $10,000 Campaign Check had come from his personal funds. Id. ¶ 24. On or about October 31, 2023, Flanagan allegedly caused two falsified expense reports to be submitted to OCPF. Id. ¶ 26. Flanagan created the false expense reports in an effort to conceal his theft from HBA; specifically, "to deceive OCPF into believing: (i) that the $10,000 HBA Official Check (dated January 27, 2023) that was deposited into Flanagan's [Bank of America] Account constituted legitimate HBA-reimbursed expenses; (ii) that HBA had a practice of allowing Flanagan to withdraw large sums of money from HBA for the purpose of expense reimbursement; and (iii) that the $10,000 Campaign Check was a legitimate donation of Flanagan's own personal funds." Id.

In or about May 2024, to hide his theft of HBA's money from HBA, Flanagan created false transaction entries in HBA's accounting/bookkeeping software for HBA-related expenses and falsely claimed to the HBA Board that he withdrew HBA funds to reimburse himself for said expenses that he had paid for out-of-pocket with his personal funds. Id. ¶¶ 14-15. When the HBA Board asked Flanagan to provide substantiation that he had used his personal funds to pay for the HBA expenses, Flanagan provided HBA with two falsified expense reports, each with itemized

4

attachments.  Id. ¶ 15.  The first expense report, submitted to justify Flanagan's $8,500 withdrawal from HBA funds on December 19, 2022, included attachments which purported to list $8,500 in reimbursable expenses that Flanagan claimed he had spent on HBA-related expenditures from January 1 to May 31, 2022.  Id. ¶¶ 15-18.  The second expense report, submitted to justify Flanagan's $10,000 withdrawal of HBA funds on January 28, 2023, included attachments which purported to list $10,000 in reimbursable expenses that Flanagan claimed he had spent on HBA-related expenditures from June 1, 2022 to January 27, 2023.  Id. ¶¶ 15, 19.  Flanagan also allegedly filed tax returns from tax years 2021 through 2023 which failed to include all of his income, including the allegedly stolen funds.  Id. ¶¶ 27-38.

## IV.    Procedural History

On April 10, 2025, a grand jury indicted Flanagan on five counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts I-V) and one count of falsification of records in violation of 18 U.S.C. §§ 1519 and 2 (Count VI).  D. 1.  Flanagan subsequently moved to dismiss Count Six of the original indictment.  D. 52.  After the parties submitted briefing on the motion to dismiss, a grand jury returned a thirteen count Superseding Indictment, indicting Flanagan on eight counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts I-VIII), one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count IX), one count of falsification of records in violation of 18 U.S.C. §§ 1519 and 2 (Count X) and three counts of filing false tax returns in violation of 6 U.S.C. § 7206 (Counts XI-XIII).  D. 62.  The charge and allegations supporting Count Six of the original indictment mirror those under Count Ten of the Superseding Indictment.  Compare id. at ¶¶ 43-44 with D. 1 ¶¶ 26-27.  At oral argument, the parties indicated their position that given the inclusion of this charge in the Superseding Indictment, it does not moot Flanagan's motion to dismiss and that the Court should treat the motion as challenging the operative count, Count Ten of the Superseding Indictment.  D. 64; see United States v. Luthra, No. 15-cr-30032-

5

MGM, 2017 WL 11447192, at *1 n.1 (D. Mass. Sept. 26, 2017).  The Court heard the parties on

the motion and took the matter under advisement.  Id.

## V.        Discussion

Count Ten of the Superseding Indictment charges, in relevant part, as follows:

In or around October 2023, in the District of Massachusetts, and elsewhere, . . . [Flanagan], did knowingly conceal, cover up, falsify, and make a false entry in any record and document with the intent to impede, obstruct, and influence the investigation of any matter within the jurisdiction of any department and agency of the United States, to wit, the United States Postal Inspection Service [("USPIS"], and in relation to and contemplation of any such matter. . . .  All in violation of Title 18, United States Code Section 1519 and 2.

D. 62 ¶ 44.  Flanagan argues that dismissal of this charge is warranted because "the indictment

fails to allege a factual basis to support a claim that the defendant obstructed a matter within the

jurisdiction of the United States."  D. 53 at 2-5.

18 U.S.C. §1519 provides that:

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Id.  Accordingly, to state an offense under 18 U.S.C. § 1519, the government must allege that

Flanagan:  "(1) knowingly falsified (2) a document (3) with the intent to impede, obstruct, or

influence the investigation of a matter within federal jurisdiction."  United States v. Cartagena,

172 F.4th 109, 114 (1st Cir. 2026) (citing United States v. Katakis, 800 F.3d 1017, 1023 (9th Cir.

2015)).

Flanagan's challenge focuses on the third element of this charge, the "jurisdictional"

requirement.  D. 53 at 3-5.  As both parties note, id. at 2-3; D. 56 at 4, although the First Circuit

has not yet adjudicated the jurisdictional limits of 18 U.S.C. § 1519, Circuits that have addressed

6

the issue have concluded that 18 U.S.C. § 1519 does not require that the federal matter have been pending at the time of the obstructive act, or that the defendant knew the matter was within the jurisdiction of a department or agency of the United States.  See, e.g., United States v. Gray, 692 F.3d 514, 519 (6th Cir. 2012) (concluding that the government is not required to show that a defendant "intended to obstruct a federal investigation" since "the plain language of the statute only requires the [g]overnment to prove that [the defendant] intended to obstruct the investigation of *any* matter that happens to be within the federal government's jurisdiction") (emphasis in original); United States v. Moyer, 674 F.3d 192, 206-10 (3d Cir. 2012) (citing Gray and concluding that where "the statute does not require the existence of a federal investigation before criminal liability may attach, it certainly does not require the government to identify a specific federal statute that is the focus of the investigation"); United States v. Sheffler, 125 F.4th 814, 826 (7th Cir. 2025) (concluding that "[i]t is enough for the defendant to intend to obstruct an investigation, and on an unrelated note, for the investigation to be within federal jurisdiction" and collecting cases).  Rather, "[i]t is sufficient that the 'matter' is within the jurisdiction of a federal agency as a factual matter," United States v. Yielding, 657 F.3d 688, 714 (8th Cir. 2011) (citing S.Rep. No. 107–146, at 15 (2002) (noting that "[d]estroying or falsifying documents to obstruct any of these types of matters or investigations, which in fact are proved to be within the jurisdiction of any federal agency are covered by this statute" (emphasis in original)); see United States v. Vastardis, 19 F.4th 573, 585-86 (3d Cir. 2021) (noting same); see also Yates v. United States, 574 U.S. 528, 536 (2015) (plurality opinion) (noting "any matter within the jurisdiction of any department or agency of the United States" is "within [§ 1519 ]'s reach"), and that the defendant satisfies one of the following intent scenarios:

> (1) a defendant acts with intent to impede, obstruct, or influence the investigation or proper administration of a federal matter, (2) a defendant, in contemplation of a

7

federal matter, acts with intent to impede, obstruct, or influence the investigation or proper administration of the matter, and (3) a defendant, in relation to a federal matter, acts with intent to impede, obstruct, or influence the investigation or proper administration of the matter.

Yielding, 657 F.3d at 711.

As to the jurisdictional requirement, the Superseding Indictment alleges that Flanagan falsified the expense reports that he submitted to OCPF with the intent to obstruct OCPF's investigation into the source of the $10,000 BOA cashier's check that Flanagan deposited into his Campaign Account, D. 62 ¶¶ 23-26, and that this "matter" was within the jurisdiction of the USPIS, id. ¶ 44. As these allegations "sketch[ ] the factual predicate" of the third element to the government's § 1519 charge, see United States v. Troy, 618 F.3d 27, 35 (1st Cir. 2010), and provides Flanagan sufficient notice of such, see Savarese, 686 F.3d at 7-8, the indictment sufficiently alleges this element. See United States v. Baugh, 588 F. Supp. 3d 140, 149 (D. Mass. 2022) (rejecting defendant's challenge to jurisdictional requirement of § 1519 where "indictment sufficiently alleges an intent to impede investigation of a matter within the jurisdiction of the United States, that is 'the conspiracy charged in Count One of [the] Indictment'") (alteration in original) (internal citation omitted); United States v. Atkinson, No. 12-cr-0086-WS, 2012 WL 3206446, at *3 (S.D. Ala. Aug. 7, 2012) (concluding that "[t]he indictment charges that the [crime] was within the jurisdiction of DHS [] which adequately alleges this element and sufficiently apprises the defendants of the specific crime with which they are charged"), aff'd, 532 F. App'x 873 (11th Cir. 2013); see also Pugin v. Garland, 599 U.S. 600, 605 (2023) (noting that "[§ 1519] covers acts intended to impede a federal investigation or proceeding, 'including one not even on the verge of commencement'") (quoting Yates, 574 U.S. at 547).

Flanagan argues that the operative indictment fails to allege facts that state § 1519's jurisdictional requirement because OCPF's investigation into the expense reports was "limited to

8

assessing compliance with state campaign finance disclosure laws" and the Postal Inspection Service does not have jurisdiction to investigate state law offenses. D. 53 at 3-5. Flanagan "appears to conflate what the United States must allege in the indictment with what it must prove at trial." See United States v. Davis, No. 24-cr-00343-SRC-1, 2026 WL 160811, at *12 (E.D. Mo. Jan. 21, 2026) (rejecting challenge to second element of § 1519 claim). "In order to provide notice of the crime charged, it is not necessary for the indictment to allege facts proving [a federal agency's] jurisdiction or showing why the defendants would have contemplated an investigation." Atkinson, 2012 WL 3206446, at *3. That the indictment alleges that Flanagan's conduct was within the jurisdiction of USPIS is sufficient at this stage. See id.; Baugh, 588 F. Supp. 3d at 149; United States v. Buggs, No. 25-cr-00272-SEG-RDC-2, 2026 WL 546500, at *3 (N.D. Ga. Jan. 30, 2026), report and recommendation adopted, No. 25-cr-00272-SEG-RDC-2, 2026 WL 543765 (N.D. Ga. Feb. 26, 2026); Davis, 2026 WL 160811, at *11-12.

Flanagan's reliance upon United States v. Singh, 979 F.3d 697 (9th Cir. 2020) is unavailing. In Singh, a defendant challenged his conviction under § 1519 arguing, as relevant here, that an investigation into his conduct "[wa]s not within the jurisdiction of the United States, because it involved a local campaign, and the falsified campaign disclosure forms violated state and local laws, not federal law." Singh, 979 F.3d at 719-20. While the Ninth Circuit acknowledged that "violations of state campaign disclosure laws do not fall within the jurisdiction of the United States," the court rejected the defendant's argument given that "[t]hat the reports were filed pursuant to state law has no bearing since they were sought in connection with the investigation of a federal crime." Id. at 720. There, the FBI investigated the state campaign at the center of the defendant's alleged § 1519 violation under its jurisdiction to investigate violations of Federal Election Campaign Act, which "extends to state and local elections insofar as the FBI

investigates donations by a foreign national." Id. The Ninth Circuit thus concluded that the conduct fell within § 1519 jurisdictional limits. Id. Similar to the defendant in Singh, Flanagan "misconstrues the focus of the investigation" as it relates to § 1519. Id. That Flanagan filed the allegedly false expense reports in response to OCPF's investigation of his compliance with state law "has no bearing" as the indictment alleges that USPIS, a federal agency, has jurisdiction to investigate such matter. See id.; United States v. Norman, 87 F. Supp. 3d 737, 742 (E.D. Pa. 2015) (rejecting jurisdictional challenge to § 1519 charge where "[t]he false entry alleged is part of the RICO conspiracy alleged, and there is no doubt that there is federal jurisdiction over the RICO conspiracy"); see also Atkinson, 2012 WL 3206446, at *3.

Flanagan's reliance upon United States v. Craig, 3 F. Supp. 3d 756 (E.D. Ark. 2014), which Flanagan cited for the first time during oral argument, fares no better. In Craig, a defendant authored and provided a county prosecutor with a written timeline of events that she claimed took place in the months leading up to and on the day of her alleged shooting in preparation for the alleged shooter's trial. Craig, 3 F. Supp. 3d at 758. The defendant later received a threatening letter that mentioned the shooting via the United States Postal Service ("USPS") which she provided to the police and was eventually given to USPS for investigation. Id. As a part of the investigation into the letter, the defendant provided the United States Postal Inspector with the previously-authored timeline of events that she had provided to the county prosecutor in preparation for the alleged shooter's trial. Id. The defendant was subsequently charged and convicted under § 1519 for falsifying the timeline of events "with the intent to impede, obstruct, and influence the investigation of her receipt of a threatening letter through the United States Mail . . . a matter that the defendant knew was within the jurisdiction of the United States Postal Service." Id. at 758 & n.4. The defendant challenged her conviction, arguing that the jury could

10

not reasonably have concluded that she falsified the timeline with the intent to impede a matter within the jurisdiction of USPS or any other federal agency.  Id. at 759.  The court held that the intent aspect of § 1519's jurisdictional requirement was not met, as when the defendant authored and gave the county prosecutor the false timeline to use in preparation for the alleged shooter's trial, "no facts existed that would have given [USPS] jurisdiction over the investigation of the [] shooting."  Id. at 760.  The court also concluded that it was not proven that "at that time [the defendant] could have foreseen that months later the document would become relevant to a federal investigation," as the threatening letter "which created federal jurisdiction—was sent months after the [alleged shooter's] trial and was not sent by [the defendant]."  Id.

Craig is unavailing here for two reasons.  First, as noted above, courts have recognized that a federal investigation into a matter need not be underway or even foreseeable for § 1519 to apply. Gray, 642 F.3d at 379 (noting that "§ 1519 does not require the existence or likelihood of a federal investigation"); United States v. Michel, No. 19-cr-148-1-CKK, 2024 WL 1603362, at *7 (D.D.C. Apr. 12, 2024) (collecting cases).  To the extent, therefore, Craig bases its holding, in part, on the foreseeability of a federal investigation, Craig, 3 F. Supp. 3d at 763, this reasoning is not persuasive in light of the statutory language and the line of cases concluding otherwise.  Nor is the timing of the falsified document's creation in relation to the federal investigation dispositive, for the same reason.  See, e.g., United States v. Cowden, No. 16-cr-24, 2016 WL 11431451, at *3 (N.D.W. Va. Sept. 12, 2016) (concluding that "a foreseeable investigation is not required to violate Section 1519" and rejecting argument that federal investigation that occurred fourteen months after documents were falsified was "so remote that the Defendant could not have contemplated or foreseen the investigation when he submitted the forms"), report and recommendation adopted, No. 16-cr-24, 2016 WL 5372841 (N.D.W. Va. Sept. 26, 2016).

Second, Craig is also distinguishable from the factual allegations in the present case.  In Craig, the federal "matter" within USPS's jurisdiction that the defendant was convicted of attempting to obstruct was the investigation of "the threatening letter" via submission of the false timeline, Craig, 3 F. Supp. 3d at 763.  Whereas the Craig court concluded that, at the time the defendant created the false timeline, "no facts existed that would have given [USPS] jurisdiction over the investigation of the [] shooting," which was the subject of the false timeline, id. at 760, here, as alleged, at the time Flanagan created the false expense reports, Flanagan had already engaged in the federal "matter" within USPIS's jurisdiction that he is charged with attempting to obstruct the investigation of via the expense reports:  the wire fraud that allegedly took place between 2021 and 2023, D. 62 ¶¶ 40; see D. 56 at 8.  Moreover, the Superseding Indictment alleges that Flanagan's intent in creating the false expense reports was to mask the source of the $10,000 BOA cashier's check that was deposited into his Campaign Account, that source allegedly being the $10,000 stolen from HBA's FCU account via the $10,000 HBA Official Check, which is the same matter investigated in relation to the wire fraud.  D. 62 ¶¶ 25-26; see Moyer, 674 F.3d at 206-10 (upholding conviction under § 1519 where jury could have concluded that defendant's falsification of police reports regarding racially motivated killings was done in contemplation of a federal investigation as the FBI has jurisdiction over racially motivated killings).  These allegations are sufficient to adequately allege § 1519's jurisdictional requirement.  See Yielding, 657 F.3d at 711.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Flanagan's motion to dismiss, D. 52, what is now Count Ten of the Superseding Indictment.


**So Ordered.**

/s Denise J. Casper
Chief United States District Judge